**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | BKY No. 20-32155 |
| | Chapter 11 |
| DigitalTown, Inc., | |
| Debtor. | |

**DEBTOR'S MEMORANDUM IN OPPOSITION TO THE MOTIONS OF THE U.S. TRUSTEE TO RESCIND SUBCHAPTER V ELECTION AND TO CONVERT OR DISMISS THE CASE**

**INTRODUCTION**

This memorandum is submitted by the debtor, DigitalTown, Inc. ("DigitalTown") in response to the motions of the U.S. Trustee ("Trustee") to rescind the debtor's Subchapter V status and to convert or dismiss the case. This memorandum addresses both motions. The motions are inherently related. The Trustee's argument is based at least in part upon the following claims and arguments:

- That the debtor is not a qualified business under Subchapter V;

- that the debtor's reorganization is completely dependent upon the successful application of certain provisions of Subchapter V;

- therefore the debtor's reorganization is not possible; and

- the debtor is out of business; and

- the debtor grossly mismanaged its affairs, prepetition.

The Trustee makes these assertions as though they were logical or mathematical tautologies; when in fact the factual claims are based on hearsay evidence, surmise and speculation; the Trustee's key factual conclusion is in error, and the legal conclusions are disputed. The debtor maintains that it is a "small business debtor" qualified for relief

under Subchapter V; that it is not "out of business"; that it has substantial on-going business activity; and more critically that it is able to reorganize effectively.

DigitalTown will demonstrate that it is a small business qualified for relief under Subchapter V; and that there is no cause for the conversion or dismissal of the case

## FACTUAL BACKGROUND

DigitalTown is a Minnesota corporation. Its stock is publicly traded on OTC Markets under ticker symbol "DGTW". As at the filing date, the debtor had approximately 287 shareholders, (total number of shareholders is 359, but that includes employees or former employees who received stock as compensation, and which are properly excluded from the relevant calculation).

DigitalTown was formed in 1982 as Command Small Computer Learning Center, Inc. Throughout its history, the business has undergone various changes of name and fundamental changes in business strategies. In recent years, the basic vision of the business has been to develop locally based e-commerce platforms.

Over the years there have been several changes in senior management and the board, often accompanied by different visions of how to accomplish the company's goals and objectives. The current directors were appointed in May 2019. The prior board had invested heavily in acquiring a large number (scores of thousands) of web domains. The former business was directed towards acquiring and marketing web domains. Those efforts were unsuccessful.

The current board saw the need to substantially shift the direction of the company. The company was sustaining significant operating losses. At its high point, the company had 59 employees and independent contractors globally; and as direct result of

management's efforts to cut costs, as of the date of filing the company had no employees. The company had accrued substantial debt and was engaged in litigation with a former chief executive, Mr. Richard Pomije. The company did not have the resources to defend against the Pomije lawsuit and Mr. Pomije obtained a judgment of more than $675,000.

Based on these circumstances, management determined that: the company needed to refine, if not replace, its business plan; any business plan would require new capital; and that it would be virtually impossible to bring in new capital with the existing debts and continued litigation. The resolution of debt therefore became a high priority. Mr. Ciacco, a director and CEO, undertook a program of negotiations with creditors directed towards settling with creditors by converting their respective debt into equity. These efforts were substantially successful. During the period May 1, 2019 through August 31, 2020, DigitalTown entered into agreements with 32 creditors who agreed to convert debt into equity thereby resolving $1,576,382 of debt. Those efforts remain ongoing as of the date of filing this case, with an additional 4 creditors committing to converting an additional $585,300 of debt to stock at the same terms. These 4 creditors are included as unsecured creditors under this plan.

In late Spring, 2020, Mr. Pomije commenced a second lawsuit seeking to recover an additional (approximately) $730,000. The second Pomije suit disrupted the opportunity to bring in new investment dollars. Although DigitalTown not only had substantial defenses to this action, believing that this action was completely without merit, the mere existence of a new lawsuit and the prospects of incurring substantial legal fees to defend against the new claim were highly problematic. Since the second Pomije suit effectively barred moving forward at that point, management was faced with two

stark choices – to either abandon the new busines plan and investment opportunity, effectively terminating the business; or to find some means of implementing the business plan.  Having invested substantial time and effort and having made promises to numerous creditors in order to fulfill their fiduciary obligation to shareholders, the board of directors determined that a reorganization under Chapter 11 was the best option; hence this case.

Based in part on management's pre-petition efforts, two groups agreed to move forward with financing its business plan; one based on convertible debt; and one for an equity line of credit facility.  These financing commitments are premised upon the debtor's reorganization under Chapter 11; and form the financial underpinnings of the debtor's plan of reorganization.  Management believes that these financial commitments are adequate and sufficient to enable the debtor to move the business forward; to implement the new business plan; and to revive income producing operations; all premised on the notion that it has a viable business plan.

In summary:  pre-petition the debtor made appropriate management decisions to cut losses by eliminating expensive overhead.  The debtor implemented a largely successful plan which is ongoing to convert debt into equity as a preliminary step to implementing its business plan; the debtor has developed a business plan; and the debtor has obtained financing commitments sufficient to implement the business plan.

Since filing, the debtor has worked diligently on its plan of reorganization.  The plan is premised on the implementation of a new business plan; which in turn, is premised on bringing in new investment dollars and a shift in the basic business model.  The debtor will continue to work on the development of its own software.  The debtor

will look to acquire sympathetic business enterprises. The debtor has prepared projections which show positive cash flow beginning in year four.

The plan is premised upon converting all of the outstanding pre-petition debt into two classes of equity. The value of each creditor's debt will convert to stock at a conversion rate equal to that used for those pre-petition creditors who agreed to convert debt into equity before this case. To be fair and equitable, all creditors/shareholders (those who converted debt into equity pre-petition, and those whose debt is converted into equity under the plan) will be treated on the same basis. Then, these same creditor/shareholders will receive preferred shares entitling each respective holder to distributions of all of the debtor's disposable income over the five-year term of the plan. The debtor anticipates distributions in years four and five aggregating approximately 23% of the pre-petition value of the debt. At the conclusion of the term of the plan these preferred distributions will cease, and the creditor/shareholders will be treated on the same basis as all other holders of common stock of the debtor.

The plan is supported by two financing commitments; one to fund short term operating expenses providing an estimated $300,000 and a $5 million equity line of credit facility.

Drafts of the plan were provided to the US Trustee and the Subchapter V Trustee in September. The debtor intends to file its plan of reorganization before the hearing on the instant motions is conducted.

# ARGUMENT

1. **Introduction.**

The U.S. Trustee moves the court for relief on two fronts: The Trustee moves the court to determine that the debtor is not a small business debtor within the meaning of 11 U.S.C. § 1182 and is therefore not qualified for relief under Subchapter V of Chapter 11; and the Trustee moves to convert or dismiss the case. These separate motions are at least to some degree inter-related. The trustee argues, in part that because the debtor is not eligible for relief under Subchapter V and asserts that the debtor cannot reorganize except under Subchapter V, the case ought to be converted or dismissed.

To the contrary, the debtor maintains that it is eligible for relief under Subchapter V and that the debtor can effectively reorganize. The debtor maintains that it is not "out of business; but rather has been regrouping in an effort to reorganize. To that end, the debtor is filing its plan of reorganization. The plan is viable and supported by new financing commitments.

2. **The debtor is a small business debtor eligible for relief under Subchapter V**

The resolution of the Trustee's motion to rescind the debtor's status as a small business debtor eligible for relief under Subchapter V turns on technical issues of federal securities law. The issue presented is whether DigitalTown is "subject to the reporting requirements of Sections 13 and 15(d) of the Securities and Exchange Act of 1934". Here, the debtor is not subject to those reporting requirements and is therefore eligible to be a small business debtor under Subchapter V.

Subchapter V of Chapter 11 was adopted in 2019 and went into effect in February 2020. Subchapter V was expressly intended to make it easier for small businesses to

effectively reorganize, by simplifying certain requirements otherwise applicable in Chapter 11 proceedings; and obviating and modifying others. Overall, the reorganization scheme provided in Subchapter V was intended to make the process more efficient; less costly; and easier for small businesses. Congress determined that those procedural "advantages" are only available to small business debtors.

> Section 1182 provides in relevant part:
>
> (1) Debtor.—The term "debtor"—
>
> (A) subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor; and
> (B) does not include—
> (i) any member of a group of affiliated debtors that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $7,500,000 (excluding debt owed to 1 or more affiliates or insiders);
> *(ii) any debtor that is a corporation subject to the reporting requirements under section 13 or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m, 78o(d)); or*
> (iii) any debtor that is an affiliate of an issuer, as defined in section 3 of the Securities Exchange Act of 1934 (15 U.S.C. 78c). [Emphasis added.]

The key issue here is whether this debtor is "subject to the reporting requirements under section 13 or 15(d) of the Securities Exchange Act of 1934". The resolution of the Trustee's motion to rescind the debtor's status as a small business debtor eligible for relief under Subchapter V tunrs wholly on whether the debtor is subject to the reporting obligations of Sections 13 and 15(d) of the 1934 Act. The debtor is not subject to those reporting requirements and is therefore eligible to be a small business debtor under Subchapter V.

Generally, under United States laws, when a company seeks to sell its stock in the public market in interstate commerce, the issuer must comply with registration requirements and ongoing reporting requirements. Again, at a general level, a publicly traded, reporting company must file quarterly and annual reports with the Securities Exchange Commission. Although the securities laws and attendant rules may seem labyrinthine, and of Talmudic complexity, the issues raised here are rather straightforward.

The complexity of the potential issues are set forth in the letter of Michael F. Vilardo, Special Counsel to the Securities & Exchange Commission, under date of October 21, 2020 ["Vilardo letter"]. The Vilardo letter does an admirable job of outlining the Section 13 and 15(d) reporting requirements. Its ultimate relevance, admissibility and evidentiary status are, however, dubious. The author expressly states that he expresses "no views on the particular legal questions raised in the matter before the Bankruptcy Court. Vilardo letter at 1. And the letter expressly disclaims being any sort of official position of the SEC. Vilardo letter, footnote 2, at 1. While the Vilardo letter might prove helpful in developing a general understanding of the applicable regulatory framework, it expressly does not address the specifics of this case and cannot be taken as supporting the Trustee's position; and in light of the express disclaimers cannot be taken as expert opinion not as an authjoritative position of the SEC.

While the debtor may have been subject to reporting requirements of Sections 13 and 15(d) historically, the debtor was not subject to the reporting requirements as of the date of filing. The reporting requirements of each section of the Act operate somewhat independently. As effectively acknowledged by the U.S. Trustee, the debtor's filing of

Form 15 effectively suspended DigitalTown's obligation to file under Section 13. The Trustee argues, in large measure relying on the Vilardo letter, that the filing of Form 15 did not operate to suspend reporting obligations under Section 15(d).

That point in itself does not succor the Trustee's position. DigitalTown maintains that either it had no reporting obligation under Section 15(d) or that any prior obligation to report under Section 15(d) was automatically suspended as of March 1, 2020. Because the debtor had no reporting obligation, or that reporting obligation had been suspended; it was not "subject to the reporting requirements of Section 15(d) of the Securities Exchange Act of 1934"; and was a small business debtor when this case was filed.

The first question that must be addressed is whether the debtor had a reporting obligation under Section 15(d) as of the commencement of the case. Section 15(d) of the 1934 Act requires certain periodic supplemental reports with respect to registrations, each one refreshing the reporting obligations requirements. The debtor had no pending registrations at the time of the commencement of the case which would have subjected it to reporting requirements under Section 15(d). The debtor most recently filed a registration statement in 2011.[1] Since then, the Debtor filed annual 10-K reports up to and including June 2019. DigitalTown's last filed 10-K report was June 13, 2019 which refreshed the debtor's Section 15(d) reporting requirement obligation to February 29, 2020. The reporting requirement obligations lapsed March 1, 2020 (the beginning of the current fiscal year) and concomitantly, the debtor's obligation to file under Section 15(d) was suspended. The debtor did not file its 10-K report for the fiscal year ending February

---

[1] DigitalTown filed a registration statement in 2018, but it was subsequently withdrawn; and did not become effective.

29, 2020, which was due April 29, 2020, which in effect did not refresh the debtor's Section 15(d) reporting requirement obligations. The debtor had no obligation to file reports under Section 15(d) as of the date it filed the petition in this case. The Vilardo letter further outlines, under the operation of the Exchange Act itself, there are no requirements for reporting obligations to be current, and that no other filings are conditional on the automatic suspension taking effect.

Even if the debtor had some ongoing duty under Section 15(d), that obligation was suspended automatically as of March 1, 2020. Section 15(d)(1) of the 1934 Act provides, in relevant part that:

> The duty to file under this subsection shall also be *automatically suspended* as to any fiscal year, other than the fiscal year within which such registration statement became effective, if, at the beginning of such fiscal year, *the securities of each class,* other than any class of asset-backed securities, *to which the registration statement relates are held of record by less than three hundred persons*…[Emphasis added.] 15 USC §780 (d) (1)

Although the debtor had 357 record shareholders as of March 1, 2020, it only had 287 shareholders for the purposes of determining its Section 15(d) obligations. The difference represents the number of employees or former employees who received stock as compensation and are excludible from the total. See SEC Rule 230.701. Since the debtor had fewer than 300 cognizable record shareholders as of the commencement of its current fiscal year, its obligation to report under Section 15(d) was automatically suspended with no further actions required. And since the debtor did not file any 10-Ks within the current fiscal year, it did not refresh any reporting requirements associated with registration statements of the past.

The filing of Form 15 suspended DigitalTown's obligation to file reports under Section 13. The debtor had no present obligation to file reports under Section 15(d) because that obligation had been automatically suspended at the start of the debtor's fiscal year (March 1, 2020), long before the bankruptcy filing, and will continue to be suspended until such time DigitalTown files a registration statement.

As of the commencement of this case the debtor was not subject to the reporting requirements of Sections 13 and 15(d) of the Securities Exchange Act of 1934. The debtor is a qualified small business debtor. The debtor is entitled to proceed under the provisions of Subchapter V of Chapter 11. The Trustee's motion should be denied.

3. **There is no cause for conversion or dismissal of the case.**

The Trustee's motion to convert or dismiss the case should be denied. The motion to convert or dismiss is based on hearsay testimony and a fair amount of surmise and speculation. Most critically the trustee ignores a critical fact: the debtor has proposed a viable plan of reorganization and should be allowed to proceed with the reorganization process. The debtor has developed a business plan for moving forward and has obtained financial commitments necessary to implement that plan. The business plan and the plan of reorganization are viable and present a valid basis for the reorganization of the debtor's business and its debt.

Before addressing the technical and legal issues raised by the U.S. Trustee's motion, we address the practical circumstances. As of the date of filing the debtor's assets were minimal. The debtor holds intellectual property consisting of its software and trade name. These assets are of minimal value. The debtor's management does not believe that there is any market for dated software or for tradenames that have not had

any substantial presence in the marketplace.  The software is outdated and needs to be upgraded.  Management believes it would be less expensive for a competitor to start from scratch, building its own software platform consistent with current standards and protocol that would accomplish the same or similar objectives than it would be to update the existing software.  Consequently, management does not believe that there is any significant market value in the software. Internally, it provides a base for future development, but that value is almost certainly only valuable to the debtor; and only to the debtor as operating enterprise.

The debtor believes its options are rather bleak.   It is certainly true that absent the business plan the debtor has developed and supported by financing commitments, there is no likely way forward for this debtor.  The choices are stark – liquidation which likely produces no benefit to creditors and wipes out millions of dollars of investment dollars of shareholders; or allow the debtor to move forward with the prospect of recovery for all stakeholders.  The fact that new investors are willing to commit to this business plan is highly encouraging.  But the ultimate choice is real:  The certainty of zero recovery from the termination of the business; or the prospect of rebuilding a successful company through new investment dollars and creating new business opportunities.

A second digression concerning the quality of the evidence by the Trustee, before addressing the legal arguments:  The Trustee's motion is not supported by any substantial evidence.  The motion is verified.  But, the Trustee relies on Mr. Fadlovich's "take" on the debtor's testimony at the Section 341 meeting.  Transcripts are not offered into evidence.  This is mere hearsay.  Mr. Fadlovich "over-reads" Mr. Ciacco's testimony.

While it is true that the debtor has no employees and no current operations; it is not a fair conclusion that the debtor is "out of business". Mr. Ciacco never testified that the debtor had gone out of business. The debtor is actively engaged in the efforts to reorganize its business and to continue building out its plans and strategies for the future.

The Trustee suggests that the debtor is sustaining substantial losses. There is no evidence for that suggestion. No losses are shown on the monthly operating reports. The situation is in fact stable. The debtor intentionally cut its overhead to stem further losses. (In a somewhat perverse way, the Trustee is now holding the debtor's prudent pre-petition efforts to cut losses in furtherance of its overall reorganization process; against the debtor. Taking aggressive steps to stem losses is commendable and shouldn't be held against the debtor.)

The Trustee talks about "stock manipulation". There is no evidence of stock manipulation whatsoever. The board of directors have statutory fiduciary duties to the shareholders. Understanding that management, acting as debtor-in-possession, has a fiduciary duty to the creditors, and that duty is paramount; there is nothing wrong with trying to preserve shareholder value; if possible, and obviously, only if that can be achieved consistent with the mandates of the Bankruptcy Code. The Trustee implies that the mere fact that the debtor has three billion shares is somehow evidence of stock manipulation, some improper purpose or an insurmountable obstacle to reorganization – none of which is true. The number of issued and outstanding shares is merely a fact; and that fact does not support any negative inferences.

The Trustee asserts that the debtor cannot obtain confirmation because it is not a small business debtor. While the debtor maintains that it is a small business debtor, the

trustee just assumes that the debtor cannot reorganize under Chapter 11; that assumption is not valid. That assumption assumes that unsecured creditors would not vote for the proposed plan; and it assumes that the debtor could not propose a different plan.

The Trustee asserts, without any evidentiary basis that the financing commitments that support the debtor's plan are insufficient to resolve the debtor's existing financial problems. That assertion is simply not true. The debtor's projections demonstrate otherwise.

*Proceeding to the merits:*

The Trustee has not established cause for conversion or dismissal of the case under Section 1112. The Trustee proceeds on the basis of two provisions of Section 1112: 1112 (b) (4) (A) [substantial continuing losses and absence of a reasonable likely of rehabilitation], and 1112 (b) (4) (B) [gross mismanagement].

Turning first to the question of gross mismanagement. This section only applies to gross mismanagement in the administration of the estate. Cause for dismissal under Section 1112 (b) 4) (B) expressly refers to gross mismanagement *of the estate.* Cause for relief under Section 1112 (b) (4) (B) cannot be based on pre-petition events and circumstances. There is no suggestion that there has been any mismanagement in the course of this case.

Indeed the claim of gross mismanagement appears to be based on no evidence whatsoever – it appears to be predicated solely on the conclusory proposition that it must be gross mismanagement to have run up substantial debt and have nothing to show for it. The claim appears to be that having accrued a substantial amount of debt and then trying to deal with that debt using available and appropriate business tools (such as settling debt,

and converting debt into equity) constitutes gross mismanagement. On its face, that is an unreasonable position that would virtually preclude Chapter 11 relief to most financially challenged enterprises.

Even if the court could properly take into account pre-petition events and circumstances in determining whether there was gross mismanagement of the estate; the "charge" is levelled at the wrong people. Virtually all of the debtor's debt was accrued during the tenure of prior management. The current board of directors has not incurred any substantial new debt during its tenure and has worked diligently to redress the debt situation, sought new capital and developed a going forward business plan. The charge of gross mismanagement of the debtor pre-petition cannot be laid at the feet of the debtor's current management team.

The Trustee has not established "cause under Section 1112 (b) (4) (A). That section requires a showing of substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. The requirement here is conjunctive. The Trustee must establish on the one hand, substantial or continuing loss to or diminution of the estate *and* the absence of a reasonable likelihood of rehabilitation.

The first clause focuses on the worsening of possible outcomes for creditors. If the debtor's financial situation is worsening while the case is pending, creditors may be better off if the debtor is liquidated sooner rather than later. It must be noted that the loss or diminution at issue here is that of the estate. Prepetition losses are irrelevant to this analysis. Here there is no substantial loss or continuing loss nor is there any diminution of the estate. The debtor is not incurring operating debt. The only debt that is accruing are administrative expenses of the reorganization, which are not substantial. And most

importantly, in light of the minimal value of the estate do not materially affect the outcome for unsecured creditors – that is to say, unsecured creditors are not likely to receive anything in a Chapter 7 liquidation; and that outcome is not going to change if the case moves forward. It makes perfect sense that if a debtor were consuming asset value by pursuing a chimerical or at least unlikely reorganization, creditors may end up worse off.  Here, when there is virtually no asset value that logic simply doesn't apply.

The second criteria in Section 1112(b) (4) (A) is of critical importance. Reorganizing debtors often lose money during the reorganization process, sometimes for extended periods of time.  But (hopefully) such losses are in service to achieving the objective of an effective reorganization.  Even though the Trustee was aware that the debtor had a plan of reorganization, supported by more than $5 million dollars of post-confirmation financing commitments, and that the debtor was working well ahead of the plan filing deadline; the Trustee virtually ignores the plan.  And the Trustee blithely dismisses $5 million dollars of new investment as being insufficient.

The filing of a plan demonstrates that an effective reorganization is reasonably likely.  The plan is viable and confirmable.

Here, the facts are simple:  The debtor will file a plan (not only before the hearing, but before the deadline); the plan is based on a viable business plan; the debtor has obtained commitments for the financing necessary to implement the plan.  The debtor is moving forward timely and appropriately to reorganize under Chapter 11.

The Trustee makes much of the claim that the debtor cannot reorganize unless it is a small business debtor under Subchapter V.  While it is certainly true that certain provisions of Subchapter V make it easier for a small business debtor to obtain

confirmation of a plan; and those factors were an important part of the debtor's consideration of how to proceed; it is not ineluctable nor inevitable that the case will fail outside of Subchapter V, if the court determines that DigitalTown is not eligible for relief under Subchapter V.

First, the Trustee's argument is premised on what the debtor suggests is a false position that it is not an eligible small business debtor. But even if the debtor must proceed under Chapter 11, it is not inevitable that the debtor cannot effectively reorganize. The plan has not yet been submitted to creditors. We do not know whether the unsecured creditors will vote in favor of the plan. Even were this plan unconfirmable, the debtor would have the ability to propose other terms that may meet the requirements of Section 1129. The plan may be redrafted to avoid the need for "cram-down". But having a viable business plan and new investors willing to commit to DigitalTown's project, there is a reasonable likelihood of an effective rehabilitation.

The Trustee's position is based on speculation that the debtor cannot reorganize under the "regular" provisions of Chapter 11. That speculation simply is not reasonable at this point.

4.    **The Relief Sought**

The court should deny the Trustee's motion to rescind DigitalTown's status as a small business debtor eligible for relief under Subchapter V. If the Court determines that the debtor is a qualified small business debtor, consideration of the Trustee's motion to convert or dismiss becomes much simpler. If the debtor is to proceed under Subchapter V, much of the superstructure of the Trustee's arguments in favor of conversion or dismissal erodes; and the issues become easier to sort through. As a qualified small

business debtor with a plan timely filed, the debtor should be afforded the opportunity to procced with its reorganization efforts.

If the court determines that this case should not proceed under Subchapter V, the debtor requests that the court dismiss the case. The court must consider what is in the best interests of creditors. See, 11 U.S.C. § 1112. Conversion of the case to one under Chapter 7 is not in the best interests of creditors; nor of stakeholders generally. In light of the only assets available for distribution, outdated, nonfunctioning and thus far never successfully implemented software and tradenames, it is highly unlikely that a Chapter 7 Trustee could realize any value in a liquidation. The schedules and statements do not indicate any other value in this enterprise. There is simply no positive outcome for creditors resulting from conversion of the case to one under Chapter 7. And, of course, shareholder values would be wiped out if the company is in Chapter 7.

The best alternative is to enable the debtor to move forward with its reorganization efforts outside of bankruptcy. Creditors' ability to pursue their state law rights and remedies would be restored. The debtor's management would continue their efforts to implement a restructuring plan.

If the court determines to grant the Trustee's motion to convert or dismiss, the debtor requests that the court dismiss the case without prejudice.

## CONCLUSION

DigitalTown is a small business debtor, and qualified to proceed under Subchapter V. The Trustee's motion to rescind its status as a small business debtor under Section 1182 should be denied.

The Trustee has not established cause for the conversion or dismissal of the case. If the court does determine that relief under Section 1112 is warranted, the court should dismiss the case.

        Respectfully submitted,

        **Joseph W. Dicker, P.A.**

Dated: November 27, 2020        /e/ Joseph W. Dicker
        Joseph W. Dicker (158264)
        Suite 209
        1406 West Lake Street
        Minneapolis, MN 55408
        Telephone: (612) 827-5941