# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:  BKY No. 20-32155
Chapter 11

DigitalTown, Inc.,

        Debtor.

## DECLARATION OF SAM CIACCO

Comes now, Sam Ciacco, who upon penalty of perjury, states and declares as follows:

1. I am one of two directors, and the chief executive officer of DigitalTown, Inc., the debtor in these Chapter 11 proceedings. I make this declaration in support of the debtor's opposition to the United States Trustee's motions to rescind Subchapter V status and to convert or dismiss the case. I make this declaration upon my own knowledge, which includes my review of the books and records of the debtor, except where a statement is indicated to be made upon information and belief. If called to testify orally in these proceedings, I would testify substantially as follows:

2. The debtor was originally incorporated in 1982 as Command Small Computer Learning Center, Inc. The debtor is a Minnesota corporation. The debtor's stock is publicly traded on the OTC Market under the ticker symbol "DGTW".

3. Over time, the company's business model has changed, and it has gone through various iterations including several name changes. Throughout its history the debtor has engaged in various business activities, including computer training, and sale of personal computers.

4. In recent years the company's focus has been on developing a community based online e-commerce platform. The basic concept was to develop locally based, online communities to better serve the needs of users. Even with that focus, the company's approach has varied over a period of several years.

5. Before I was appointed onto the board on May 1, 2019, the former management team had pursued a business model that was premised in large measure on acquiring a large body of web domains. The current board determined that such a model was costly and not effective.

6. At the time I came on to the board, the company had accrued substantial debt, over $3 million, and was engaged in a lawsuit with one of its former CEO, Mr. Richard Pomije. Ultimately the Pomije lawsuit resulted in a judgment of approximately $630,000 being entered against the debtor.

7. Several things were apparent to the new management team. It was clear that the company needed a different business model because the model based on the acquisition of domains was not working, was expensive and resulting in accrual of substantial debt.

8. It was also apparent that any new business model was going to require infusion of additional capital.

9. Third, it was going to be nearly impossible to bring in new capital with which to fund the implementation of the new business plan with substantial debt and pending litigation claims. (It is pretty commonplace that investors want their investment dollars to be applied to productive uses and not to clean up old debt or lawsuits.)

10. In light of these conclusions, the current management team took the following actions: reducing overhead by limiting staff and administrative expenses; cutting costs to virtually zero; and avoiding incurring any additional losses. We undertook a program of negotiating with creditors to convert debt into equity in order to address the outstanding debt and make the company more viable for investment. We developed a new business plan and solicited and obtained commitments for new financing.

11. DigitalTown has obtained two financing commitments – One from PowerUp Lending Group Ltd. to fund the short term working capital requirements immediately after Plan confirmation which will provide approximately $300,000 of working capital; and one from Premier Venture Partners for a $5 million equity line of credit facility.

12. The terms of the business plan and the financing commitments are predicates for the debtor's plan of reorganization. The debtor is filing its plan of reorganization.

13. The financing commitments are described in more detail in the disclosure document that is an exhibit to the debtor's plan of reorganization.

14. The debtor's efforts to convert debt to equity were largely successful. In some instances, creditors were unable to accept stock for one reason or another but remain supportive of the debtor's efforts to restructure its business and move forward.

15. In Spring 2020, Mr. Pomije commenced a second lawsuit seeking additional recovery of approximately $730,000.

16. With efforts to restructure the business hindered by this new lawsuit, the board determined that reorganization under Chapter 11 was a viable way forward; especially in light of the more cost-effective and efficient provisions of the new Subchapter V.

17. I believe that the Trustee either misread or misunderstood my testimony at the first meeting of creditors.  Although it is true that other than officers, the company has no current employees and has no income producing operations.  The company does have ongoing business activities, however.  I commit a significant amount of time each day to handling matters related to DigitalTown, and have done so since May 2019.  We are working diligently to identify prospective targets of acquisition once the plan is confirmed.  I deal regularly with investors, former employees and contractors, and various vendors, to maintain those relationships and to ensure a successful implementation of the plan.  Notwithstanding the company's history, in many ways the company is effectively operating as an early-stage pre-income development company.

18. I believe the company can effectively reorganize under the current plan.  The business plan is predicated upon repurposing and redeploying our existing intellectual property and acquiring existing businesses whose fundamental business models are synergistic to DigitalTown.  Our financing commitments are real, and the investors are committed to the business model for the successful revival of the company's operations.

19. Without the implementation of the current business plan that we have developed, consummating the financing arrangements and obtaining the capital needed to

move the company forward, I do not see any viable alternative. I believe that the company was and continues to be faced with a stark choice – either effectively reorganize its business, or there is no business to reorganize.

20. Prior to the commencement of this case, the company has enjoyed the support of numerous stakeholders, and more specifically those creditors who have agreed to convert their debt into equity. This shows strong support for the debtor's business plan and intention to reorganize effectively.

21. As of March 1, 2020, the company had 287 record shareholders, not including employee shareholders who received stock, options and warrants in connection with their compensation plans. It is my understanding that individuals who received stock as part of their compensation package are excluded from the count of shareholders pursuant to Rule 701 of the Securities Act of 1933.

22. The company has not filed its 10-K statements since June 2019.

Dated: November 27, 2020               _____
                                                            Salvatore (Sam) Ciacco